THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| FAZLULLAH MOHAMMED,<br>            Plaintiff,<br>vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br>            Defendants. | Case No. 2:11CV542 DS<br><br>MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## I. INTRODUCTION

Mr. Mohammed contends that lifting some heavy objects at work on April 20, 2004 caused such a severe injury to his left shoulder that he suffered the permanent and total loss of use of his left shoulder and hand. Mr. Mohammed submitted a claim for the alleged injury under the Accidental Death and Dismemberment Plan ("AD&D Plan") of his former employer. MetLife is the claim administrator of the AD&D Plan. MetLife reviewed Mr. Mohammed's claim, and concluded that he had not suffered a covered loss. After three administrative appeals, all of which were denied, the claim was brought before this court. The Employee Retirement Income Security Act ("ERISA") governs the AD&D Plan. After carefully considering the parties briefs and the administrative record, the Court finds that MetLife provided a full and fair review of Mr. Mohammed's claim for AD&D benefits, and that MetLife reasonably determined that Mohammed was not entitled to receive AD&D benefits relating to his left shoulder and left hand. Mr. Mohammed has not provided medical evidence of an injury constituting the permanent and total loss of function in his left shoulder or left arm due to an accidental injury as required by the AD&D Plan. The Court therefore denies Mr. Mohammed's motion for summary judgment.

## III.  STANDARD OF REVIEW

### A.  Standard of Review Relating to Summary Judgment Under F.R.Civ.P. 56

Mr. Mohammed has filed a motion for summary judgment and supporting memorandum. However, in the context of an ERISA case, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."[1]  The Court will enter final judgment based on the evidence in the administrative record.

### B.  Standard of Review Under ERISA

Mr. Mohammed correctly notes that the standard of review for cases involving denial of ERISA benefits is *de novo* unless there is language in the documents that govern the ERISA plan granting discretion to a fiduciary of the plan to interpret the terms of the plan documents and to determine eligibility for benefits.[2]  In this case, there is such language.  MetLife is the insurer and the payor of benefits under the General Electric Accidental Death or Dismemberment Insurance Welfare Plan.[3]  MetLife is a "benefits administrator," because it is an "insurance company . . . that had been designated by [General Electric] to pay claims and/or administer a benefit plan on [General Electric's] behalf."[4]  MetLife in its capacity as the benefits administrator and insurer of benefits "has the authority and responsibility to interpret the provisions" of the AD&D Plan.[5]

---

[1] *Bard v. Boston Shipping Association,* 471 F.3d 229, 235 (1st Cir. 2006).

[2] *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

[3] Rec. 85.

[4] Rec. 90.

[5] Rec. 65.

Therefore the Court will consider MetLife's claim and appeal determinations under the arbitrary and capricious standard of review.[6]

Under the arbitrary and capricious standard of review, the Tenth Circuit has held that:

> '[t]he Administrator['s] decision need not be the only logical one nor even the best one. It need only be sufficiently supported by the facts within [its] knowledge to counter a claim that it was arbitrary and capricious.'[7]

The Court's "responsibility lay[s] in determining whether the administrator's actions were arbitrary and capricious, not in determining whether [the claimant] was, in the district court's view, entitled to disability benefits."[8] The Court "will uphold an administrator's decision so long as it is predicated on a reasoned basis."[9]

## IV.  DISCUSSION

Mr. Mohammed claims that prior to April 20, 2004, he had no pre-existing conditions or damage to the nerve and cartilages of the shoulders. In support of this claim, he provides statements from his treating providers. Dr. Backman states that Mohammed "had no significant injury prior to 4/20/04 to my knowledge. This injury was directly responsible for his injury and issues he is still dealing with." Dr. Backman also stated that Mr. Mohammed "has had a

---

[6] The Court notes, however, that even under the *de novo* standard of review, the outcome would have been the same. The evidence in the administrative record shows that MetLife correctly denied Mohammed's AD&D claim.

[7] *Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1098 (10th Cir. 1999) (quoting *Woolsey v. Marion Laboratories, Inc.,* 934 F.2d 1452, 1460 (10th Cir. 1991)).

[8] *Sandoval v. Aetna Life & Cas. Ins. Co.,* 967 F.2d 377, 381 (10th Cir. 1992); *see also Hancock v. Metropolitan Life Ins. Co.,* 2008 WL 2996723 (D. Utah Aug. 1, 2008), *aff'd*, 590 F.3d 1141 (10th Cir. 2009).

[9] *Graham v. Hartford Life & Acc. Ins. Co.,* 589 F.3d 1345, 1357 (10th Cir. 2009) (quotation omitted), *cert denied,* 130 S.Ct. 3356 (2010).

permanent loss of function that has been greater than one year."[10] Another treating physician said that Mohammed

> sustained an injury on April 20, 2004 that resulted in a hernia, left and right shoulder pain.  The left shoulder injury directly occurred due to the injury that he sustained while he was at work.  The patient reports that he had no pre-existing dysfunction localized to his left shoulder before.  While I have no x-rays or MRI studies of his left shoulder before this injury, I presume that his left shoulder was normal, given the fact that the patient had no previous history of pain.[11]

Notes from UUHN Westridge Medical Center state that the injury to his left shoulder occurred "while lifting a heavy object almost two weeks ago."[12]  Dr. Smoot opined about 5 months later that Mohammed could "no longer perform the duties required of him at his present work."[13] Unfortunately, Mr. Mohammed submitted very limited medical evidence in support of these statements.

Mr. Mohammed had an obligation to provide evidence establishing (i) the accident on April 20, 2004, (ii) the injury resulting from that accident, and (iii) the permanent and total loss of function in his left shoulder and left hand as a result of that accidental injury.   Mohammed failed to meet his burden of proof during the claim and appeal reviews.

The limited medical records that Mr. Mohammed submitted did not record any injury to his left shoulder or left hand.[14]  However, x-ray reports of May 3, 2004 and May 13, 2004 showed severe osteoarthritis in Mohammed's left shoulder.  On October 14, 2004, one of Mohammed's treating physicians, Dr. Coleman, described the May 13, 2004 x-ray as revealing

---

[10] Rec. 198.

[11] Rec. 208.

[12] Rec. 210 &221 (Gelman, MD., Medical Notes, dated May 3, 2004).

[13] Rec. 223 (Medical Notes, dated September 29, 2004).

[14] Rec. 283-303.

"severe left glenohumeral arthritis and moderate posterior subluxation of humeral head" in Mohammed's left shoulder.[15] Dr. Amy Geroso, who examined Mr. Mohammed shortly after the April 20, 2004 lifting accident, stated that her musculoskeletal examination indicated "pain back and shoulder." She did not report the complete loss of function of Mohammed's left shoulder or hand.[16] She excused him from work from 04/21/04 to 04/26/04, later extending it to 05/03/04. Dr. Geroso's statements about Mohammed's anticipated ability to return to work indicate that she did not feel he had suffered a permanent or total loss of function in his left shoulder or left hand.

      MetLife had the medical evidence submitted by Mohammed, reviewed by two independent physicians. Dr. Del Valle conducted the first review, and stated that an injury on April 20, 2004 could not possibly have caused the "advanced osteoarthritic changes as noted in the May 2004 x-rays."[17] Dr. Getz, a Board Certified Orthopedic Surgeon, provided the second independent review. He also noted the pre-existing nature of the osteoarthritis in Mohammed's left shoulder.[18] Neither doctor found any medical evidence that would support a finding of the April 20, 2004 lifting incident as having caused Mohammed to suffer the permanent and total loss of function in his left shoulder and left hand. MetLife denied Mohammed's AD&D claim, finding that there was substantial evidence that he had not suffered the permanent and total loss of function in his left shoulder of left hand due to an accidental injury on April 20, 2004.

---

[15] Rec. 294

[16] Rec. 302.

[17] Rec. 275.

[18] Rec. 265.

In connection with his first administrative appeal, Mohammed submitted a number of documents, including letters and office notes from his doctors, the previously submitted May 13 x-ray report, an MRI report, and an EMG report. None of these support the existence of a permanent and total loss of function in Mohammed's left shoulder and left hand due to an accidental injury on April 20, 2004. Dr. Tashijian stated that, "[w]hile I have no x-rays or MRI studies of his left shoulder before this injury, I presume that his left shoulder was normal given the fact that the patient had no previous history of pain."[19] Mohammed's physician's assistant, Ms. Macy, retracted her previous description of the April 20, 2044 lifting incident as having caused an "exacerbation" of Mohammed's left shoulder pain, but again did not cite any medical evidence of a specific injury arising out of the incident. She identified the only conditions affecting Mohammed's left shoulder as "bilateral mild carpal tunnel symptoms, osteoarthritis of left glenohumeral joint with associated rotator cuff syndrome."[20] Again, these conditions could not have developed in the short interval between the accident on April 20, 2004 and the taking of the May 3, 2004 x-ray.

The August 11, 2009 MRI of Mohammed's left shoulder confirmed the severity of the osteoarthritis.[21] The findings were consistent with the x-rays, and the MRI did not reveal any injury attributable to the April 20, 2004 lifting incident. The other letters and documents talked about Mr. Mohammed's condition, but failed to provide any medical evidence linking that condition to the April 20, 2004 accidental injury.

---

[19] Rec. 248-49.

[20] Rec. 254.

[21] Rec. 252.

MetLife referred Mohammed's appeal submissions to Dr. Getz for review. He again found no evidence of the total loss of function in Mohammed's left shoulder or left hand.[22] Dr. Getz reiterated that "[a]ll radiographic findings reveal long-standing pre-existing conditions," and observed that "[t]here is no objective evidence of acute injury."[23] MetLife upheld the claim denial in the first appeal.

In Mohammed's second appeal, his lawyer submitted an argumentative letter and copies of previously submitted documents to MetLife.[24] As part of its review of the second appeal, MetLife obtained the report of a third independent physician, Dr. Trotter, another Board Certified Orthopedic Surgeon. He also concluded that the medical evidence did not support the existence of an accidental injury on April 20, 2004 responsible for the total loss of function in Mohammed's left shoulder or left hand.[25] Metlife upheld the claim denial in the second appeal.

The documents submitted in support of the third appeal were more of the same. They contained general references to left shoulder pain and osteoarthritis, but provided no evidence linking the osteoarthritis to the April 20, 2004 lifting incident, and providing no objective analysis of the medical evidence. Two statements from different doctors discuss "marginal improvement in the mobility of [Mohammed's] left shoulder joint," and recommend "[s]uitable changes in his job pattern . . . so as to help him continue [to] earn his livelihood."[26] Both of these

---

[22] Rec. 230-33.

[23] Rec. 232.

[24] Rec. 196-223

[25] Rec. 180-85.

[26] Rec. 161-62

comments provide evidence that Mohammed had not suffered a permanent and total loss of function in his left shoulder and left hand.

## V.  CONCLUSION

For the foregoing reasons, the Court finds that MetLife provided a full and fair review to Mohammed's claim for AD&D benefits.  Based on the terms of the AD&D Plan and substantial evidence in the administrative record, MetLife reasonably determined that Mohammed was not entitled to receive AD&D benefits relating to his left shoulder and left hand.  Therefore, the Court denies Mr. Mohammed's motion for summary judgment.

SO ORDERED.

DATED this 13th day of February, 2013.

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
U.S. DISTRICT COURT